**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**
**CENTRAL ISLIP DIVISION**

| | |
|---|---|
| YOKAIRA ALTAGRACIA MATIAS CRUZ, | Civil Case No.: 26-cv-00998 |
| Plaintiff, | |
| vs. | **JURY TRIAL DEMANDED** |
| EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, and TRANS UNION LLC, | |
| Defendants. | |

**COMPLAINT**

Yokaira Altagracia Matias Cruz ("Plaintiff" or "Ms. Matias Cruz") brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and TransUnion LLC, ("Trans Union"), (collectively, "Credit Bureau Defendants") and states as follows:

**INTRODUCTION**

1.      Plaintiff, a victim of identity theft, brings this action against Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

**JURISDICTION AND VENUE**

2.      Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3.      Venue is proper in this District under to 28 U.S.C. §1391(b).

**PARTIES**

4.      Yokaira Altagracia Matias Cruz ("Plaintiff") resides in Brentwood, New York, and qualifies as a "consumer" as defined and protected by the FCRA.

1

5.      Defendant Equifax Information Services, LLC ("Equifax") is a consumer reporting agency with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

6.      Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency with a principal place of business located at 475 Anton Boulevard Costa Mesa, California.

7.      Defendant Trans Union LLC ("TransUnion") is a consumer reporting agency with a principal place of business located at 555 W Adams St. Chicago, IL 60661.

## FACTUAL ALLEGATIONS

### Identity Theft

8.      In or around 2021, an unauthorized individual ("Fraudster") applied for several federal student loans using Plaintiff's personal identifiers without her consent, knowledge, or authorization.

9.      Plaintiff did not apply for, review, execute, or sign any student loan, nor did she authorize the use of her electronic signature, or personal information for any federal student loan or education-related financial aid.

10.     The Master Promissory Notes and loan records related to the fraudulent student loans reflect personal identifying information that does not correspond to Plaintiff, including the following:

    a.   Permanent Address: 1907 Flushing Ave, Ridgewood, New York 11385, an address at which Plaintiff has never resided;

    b.   Date of Birth: March 30, 1994, which does not match Plaintiff's actual date of birth of May 30, 1994;

    c.   Email Address: <u>vielkys1820@gmail.com</u> an email address unfamiliar to Plaintiff;

    d.   Telephone Number: (929) 320-6285, a telephone number unfamiliar to Plaintiff.

11.    The same loan records further list third-party reference information that are unfamiliar to Plaintiff, including the following individuals:

    a.   Starlyn D. Torres, listed as a reference with an address at 7122 66th Road, Middle Village, New York 11379, and a telephone number of (347) 345-7900; and

    b.   Wilmy D. Torres Pena, listed as a reference with an address at 7122 66th Road, Middle Village, New York 11379, and identified as a neighbor.

**Plaintiff's Discovery of Identity Theft**

12.    Plaintiff, who arrived in the United States from the Dominican Republic in 2016, Plaintiff learned that the following federal student loan accounts were being reported on her credit reports:

    a.   MOHELA/DEPT OF ED
        Account Number: XXXXXXXXXXX120220210240314
        Date Opened: 02/10/2022
        Balance: $1,864
        Loan Type: Student loan

    b.   MOHELA/DEPT OF ED (EX, EQ, TU)
        Account Number: XXXXXXXXXXX 20220210240314
        Date Opened: 02/10/2022
        Balance $1,559
        Loan Type: Student loan

("Fraudulent Accounts")

13.    Plaintiff was alarmed by this discovery because she never attended any college or university in the United States.

**Plaintiff Obtains Her Credit Reports and Confirms the Reporting of the MOHELA Loans
in Plaintiff's Consumer Files**

14.    In or around July 2025, Plaintiff obtained copies of her consumer files from Defendants TransUnion, Experian, and Equifax. Upon review of those files, Plaintiff observed that the disputed student loan accounts were being reported to her consumer credit reports.

15.    Specifically, the Credit Bureau Defendants were reporting the following fraudulent account on her credit report:

    a.  MOHELA/DEPT OF ED
        Account Number: XXXXXXXXXXX120220210240314
        Date Opened: 02/10/2022
        Balance: $1,864
        Loan Type: Student loan

    b.  MOHELA/DEPT OF ED (EX, EQ, TU)
        Account Number: XXXXXXXXXXX 20220210240314
        Date Opened: 02/10/2022
        Balance $1,559
        Loan Type: Student loan

19.    In addition to the fraudulent accounts, Plaintiff observed that her consumer credit files contained personal identifying information that did not belong to her, including an address and telephone numbers with which Plaintiff has no association, including:

    a.  Address:
        147 Wicks Rd, Brentwood, NY 11717-2906

    b.  Telephone Numbers:
        (484) 557-0448
        (929) 320-6285

20.    Plaintiff has never resided at the foregoing address and has never used or authorized the foregoing telephone numbers.

21.    Moreover, Defendant TransUnion reported the following additional telephone numbers that do not belong to Plaintiff: (347) 319-7023; (347) 345-7900.

**Plaintiff's Dispute to the CRA Defendants November 2025**

16.     On or about November 14, 2025, Plaintiff disputed the Fraudulent Accounts with the Credit Bureau Defendants.

17.     Plaintiff provided sufficient information to identify her credit file and sufficient information to support her dispute.

18.     Plaintiff requested that the identity theft information be blocked from her credit file.

**Defendant Equifax's Unreasonable Dispute Reinvestigation December 2025**

19.     On information and belief, Defendant Equifax received Plaintiff's dispute and request that identity theft information be blocked from her credit file.

20.     On or about December 24, 2025, Defendant Equifax issued dispute results to Plaintiff stating that it had removed the address 147 Wicks Rd, Brentwood, New York 11717 from Plaintiff's consumer credit file, but that it would continue reporting the MOHELA student loan accounts.

21.     Despite Plaintiff's dispute and the supporting documentation, Defendant Equifax failed to reasonably review and consider all relevant information submitted in support of the dispute.

22.     Defendant Equifax failed to conduct a reasonable reinvestigation of Plaintiff's November 2025 dispute and failed to block the identity theft information.

23.     Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

24.     Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Defendant TransUnion's Unreasonable Dispute Reinvestigation November 2025**

25.     On information and belief, Defendant TransUnion received Plaintiff's dispute and request that identity theft information be blocked from her credit file.

26.     However, no response was received from Defendant TransUnion.

27.     Defendant TransUnion failed to adequately review all of the information provided to it by Plaintiff.

28.     Defendant TransUnion failed to reinvestigate Plaintiff's November 2025 dispute and failed to block the identity theft information.

29.     Defendant TransUnion violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

30.     Defendant TransUnion violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Defendant Experian's Unreasonable Dispute Reinvestigation February 2024**

31.     Upon information and belief, Defendant Experian received Plaintiff's dispute and request that identity theft information be blocked from her credit file.

32.     Plaintiff did not receive any written dispute results or substantive response from Defendant Experian following submission of her November 2025 dispute.

33.     On January 21, 2026, Plaintiff obtained an updated consumer credit report from Defendant Experian. Upon review, Plaintiff observed that Experian continued to report the Fraudulent Accounts with the notation "Account previously in dispute – investigation complete, reported by data furnisher."

34.    Upon information and belief, Defendant Experian failed to respond to Plaintiff's dispute.

35.    Defendant Experian failed to reinvestigate Plaintiff's November 2025 dispute and failed to block the identity theft information.

36.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

37.    Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Plaintiff's Dispute to Defendant TransUnion December 2025**

38.    On or about December 16, 2025, Plaintiff submitted a second written dispute to Defendant TransUnion.

39.    Plaintiff provided sufficient information to identify her credit file and sufficient information to support her dispute.

40.    Plaintiff requested that the identity theft information be blocked from her credit file.

**Defendant TransUnion's Unreasonable Dispute Reinvestigation December 2025**

41.    Upon information and belief, Defendant TransUnion received Plaintiff's another dispute and request that identity theft information be blocked from her credit file.

42.    On or about December 30, 2025, Defendant TransUnion transmitted an email to Plaintiff acknowledging receipt of her dispute and advising that it was awaiting a response from the data furnisher.

43.    On or about January 21, 2026, Plaintiff obtained an updated consumer credit report from Defendant TransUnion. Upon review, Plaintiff observed that TransUnion continued to report

the Fraudulent Accounts.

44.      On information and belief, Defendant TransUnion failed to adequately review all of the information provided to it by Plaintiff.

45.      On information and belief, Defendant TransUnion failed to reinvestigate Plaintiff's December 2025 dispute and failed to block the identity theft information.

46.      Defendant TransUnion violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

47.      Defendant TransUnion violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

## Plaintiff's Damages

48.      On or about January 22, 2026, Plaintiff applied for an Apple Card issued by Goldman Sachs Bank USA. Plaintiff was denied credit the same day. Goldman Sachs advised that the decision was based on information obtained from Defendant TransUnion, including Plaintiff's TransUnion credit score of 539. The stated reasons for denial included, among others, serious delinquency, high utilization, recent or unknown times since delinquency, and number of inquiries.

49.      Also on the same day, Plaintiff applied for credit with PenFed Credit Union. Her application was denied based on information obtained from Defendant Equifax, which reflected a credit score of 563. PenFed identified the presence of a severe derogatory event, excessive utilization, and recent or unresolved delinquency as the principal reasons for denial.

50.      On or about January 24, 2026, Plaintiff applied for credit with Discover and was likewise denied. Discover based its decision on Plaintiff's Experian credit report, which reflected

a credit score of 638. The denial cited serious delinquency, high balance-to-credit ratios, the length of time accounts had been established, and elevated loan balances.

51.     In each instance, the adverse credit decisions were tied to derogatory factors that were materially influenced by the continued reporting of the fraudulent student loan accounts and associated inaccurate information, despite Plaintiff's repeated disputes and identity theft reports.

52.     Plaintiff did exactly what she should have done upon realizing she was the victim of identity theft.

53.     Plaintiff filed an IC3 ID Theft Report.

54.     Plaintiff disputed with the Credit Bureau Defendants in 2025.

55.     Plaintiff immediately identified herself as an identity theft victim and requested from that the Credit Bureau Defendants block the account information that was the product of identity theft.

56.     The Credit Bureau Defendants failed to block the Fraudulent Account that was the product identity theft despite Plaintiff's disputes.

57.     Instead, the Credit Bureau Defendants repeatedly disregarded Plaintiff's credible disputes.  Often responding to a victim of identity theft that the furnisher of the account that was the product of identity theft had verified the account as accurate.

58.     As a direct result of Defendant Equifax's ardent refusal to block the Fraudulent Accounts, which was a product of identity theft, Defendant Equifax has continued to saddle Plaintiff with a fraudulent student loan accounts that was the product of identity theft.

59.     As a direct result of Defendant Experian's ardent refusal to block the Fraudulent Accounts, which was a product of identity theft, Defendant Experian has continued to saddle Plaintiff with a fraudulent student loan accounts that was the product of identity theft.

60.    As a direct result of Defendant TransUnion's ardent refusal to block the Fraudulent Accounts, which was a product of identity theft, Defendant TransUnion has continued to saddle Plaintiff with a fraudulent student loan accounts that was the product of identity theft.

61.    Further, and due to Defendants' inexplicable refusal to block the Fraudulent Accounts from an identity theft victim's consumer file, Plaintiff expended countless hours disputing the same with Defendants Equifax, Experian, and TransUnion, to no avail.

62.    Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate her disputes.

63.    At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

64.    At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

65.    Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from Defendants, Plaintiff feels a surge of panic each time she receives another communication from Defendants. Her ongoing stress and anxiety regarding the situation have affected her and her relationships negatively.

66.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove fraudulent student loan accounts that were the product of identity theft; and, the

10

expenditure of labor and effort disputing and trying to remove the fraudulent and derogatory student loan accounts that were the product of identity theft.

67.    As a result of Defendants' continued inaccurate reporting, Plaintiff further incurred higher monthly automobile financing costs of approximately $300 per month compared to the loan terms she reasonably expected; prolonged depression of her credit scores, including scores as low as 539 (TransUnion) and 563 (Equifax); loss of substantial time and effort preparing and submitting written disputes, identity theft affidavits, and supporting documentation; repeated monitoring and review of her credit reports to track unresolved inaccuracies; delay and interference with her ability to plan for homeownership; and emotional distress, including stress, anxiety, and exacerbation of her fibromyalgia symptoms during the period the fraudulent accounts remained on her consumer credit files.

68.    Plaintiff likewise suffered specific credit denials as a direct result of Defendants' continued reporting of inaccurate and identity-theft-related information. On January 22, 2026, Plaintiff was denied an Apple Card issued by Goldman Sachs Bank USA based on information obtained from Defendant TransUnion, which reflected a credit score of 539. On the same date, Plaintiff was denied credit by PenFed Credit Union based on information obtained from Defendant Equifax, which reflected a credit score of 563. On January 24, 2026, Plaintiff was denied credit by Discover based on information obtained from Defendant Experian, which reflected a credit score of 638 and cited serious delinquency and elevated loan balances.

69.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose

veracity is doubted and questioned and disbelieved by the Defendants.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(Defendants Equifax, Experian, and TransUnion)**

70.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

71.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

72.    On numerous occasions, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

73.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the Credit Bureau Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff had a loan account and that she was delinquent on at least one occasion.

74.    Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

75.    Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

76.    Defendant TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit

reports and credit files it published and maintained concerning Plaintiff.

77.      As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the fraudulent and derogatory student loan accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent and derogatory student loan accounts that were the product of identity theft.

78.      As a result of Defendants' continued inaccurate reporting, Plaintiff further incurred higher monthly automobile financing costs of approximately $300 per month compared to the loan terms she reasonably expected; prolonged depression of her credit scores, including scores as low as 539 (TransUnion) and 563 (Equifax); loss of substantial time and effort preparing and submitting written disputes, identity theft affidavits, and supporting documentation; repeated monitoring and review of her credit reports to track unresolved inaccuracies; delay and interference with her ability to plan for homeownership; and emotional distress, including stress, anxiety, and exacerbation of her fibromyalgia symptoms during the period the fraudulent accounts remained on her consumer credit files.

79.      Plaintiff likewise suffered specific credit denials as a direct result of Defendants' continued reporting of inaccurate and identity-theft-related information. On January 22, 2026, Plaintiff was denied an Apple Card issued by Goldman Sachs Bank USA based on information obtained from Defendant TransUnion, which reflected a credit score of 539. On the same date, Plaintiff was denied credit by PenFed Credit Union based on information obtained from Defendant Equifax, which reflected a credit score of 563. On January 24, 2026, Plaintiff was denied credit by Discover based on information obtained from Defendant Experian, which reflected a credit score

of 638 and cited serious delinquency and elevated loan balances.

80.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

81.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering Defendants Equifax, Experian, and TransUnion liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

82.    Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
### 15 U.S.C. § 1681i
### Failure to Perform a Reasonable Reinvestigation
### (Defendants Equifax, Experian, and TransUnion)

83.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

84.    The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1).  The Act imposes a 30-day limitation for the completion of such an investigation. Id.

85.    The FCRA provides that if a CRA conducts an investigation of disputed

14

information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  See 15 U.S.C. § 1681i(a)(5)(A).

86.     In November 2025, Plaintiff disputed the inaccurate information with the Credit Bureau Defendants and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the Fraudulent Accounts that were the product of identity theft which was a very stressful situation for the Plaintiff.

87.     Plaintiff disputed the identity theft information to the Credit Bureau Defendants to no avail.

88.     On at least one occasion, Plaintiff supported her dispute with a copy of the IC3 ID Theft Report.

89.     Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Equifax conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

90.     Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Experian conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

91.     Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant TransUnion conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently

false and highly damaging information to remain in Plaintiff's credit file.

92.     Plaintiff expended resources in the form of time and money to repeatedly dispute the same account with the Credit Bureau Defendants, repeatedly.

93.     The Credit Bureau Defendants' repeated refusals to block the disputed Fraudulent Account provided credibility to that account, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

94.     Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

95.     Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

96.     Defendant TransUnion violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed

information in Plaintiff's credit file.

97.     As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the fraudulent and derogatory student loan accounts that were the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent and derogatory student loan accounts that were the product of identity theft.

98.     As a result of Defendants' continued inaccurate reporting, Plaintiff further incurred higher monthly automobile financing costs of approximately $300 per month compared to the loan terms she reasonably expected; prolonged depression of her credit scores, including scores as low as 539 (TransUnion) and 563 (Equifax); loss of substantial time and effort preparing and submitting written disputes, identity theft affidavits, and supporting documentation; repeated monitoring and review of her credit reports to track unresolved inaccuracies; delay and interference with her ability to plan for homeownership; and emotional distress, including stress, anxiety, and exacerbation of her fibromyalgia symptoms during the period the fraudulent accounts remained on her consumer credit files.

99.     Plaintiff likewise suffered specific credit denials as a direct result of Defendants' continued reporting of inaccurate and identity-theft-related information. On January 22, 2026, Plaintiff was denied an Apple Card issued by Goldman Sachs Bank USA based on information obtained from Defendant TransUnion, which reflected a credit score of 539. On the same date, Plaintiff was denied credit by PenFed Credit Union based on information obtained from Defendant Equifax, which reflected a credit score of 563. On January 24, 2026, Plaintiff was denied credit by Discover based on information obtained from Defendant Experian, which reflected a credit score

of 638 and cited serious delinquency and elevated loan balances.

100.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

101.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering the Credit Bureau Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

102.    Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### COUNT III
### 15 U.S.C. § 1681c-2
### Failure to Block Identity Theft Information
### (Defendants Equifax, Experian and TransUnion)

103.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

104.    Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

105.    Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

106.    Defendant TransUnion violated 15 U.S.C. § 1681c-2 by failing to block the

reporting of the disputed information which was due to identity theft from Plaintiff's file.

107.    Plaintiff repeatedly submitted ample evidence of the fact that she was an identity theft victim.  Plaintiff further supported the fact that she was an identity theft victim by providing to the Credit Bureau Defendants copies of the Police Report and IC3 IDT Report.

108.    The Credit Bureau Defendants should have blocked the identity theft information but failed to do so at every turn.

109.    As a result of the Credit Bureau Defendants ' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from er good credit rating; detriment to er credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove the fraudulent student and derogatory loan accounts that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to remove the fraudulent and derogatory student loan accounts that were the product of identity theft.

110.    As a result of Defendants' continued inaccurate reporting, Plaintiff further incurred higher monthly automobile financing costs of approximately $300 per month compared to the loan terms she reasonably expected; prolonged depression of her credit scores, including scores as low as 539 (TransUnion) and 563 (Equifax); loss of substantial time and effort preparing and submitting written disputes, identity theft affidavits, and supporting documentation; repeated monitoring and review of her credit reports to track unresolved inaccuracies; delay and interference with her ability to plan for homeownership; and emotional distress, including stress, anxiety, and exacerbation of her fibromyalgia symptoms during the period the fraudulent accounts remained on her consumer credit files.

111.    Plaintiff likewise suffered specific credit denials as a direct result of Defendants' continued reporting of inaccurate and identity-theft-related information. On January 22, 2026,

Plaintiff was denied an Apple Card issued by Goldman Sachs Bank USA based on information obtained from Defendant TransUnion, which reflected a credit score of 539. On the same date, Plaintiff was denied credit by PenFed Credit Union based on information obtained from Defendant Equifax, which reflected a credit score of 563. On January 24, 2026, Plaintiff was denied credit by Discover based on information obtained from Defendant Experian, which reflected a credit score of 638 and cited serious delinquency and elevated loan balances.

112.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

113.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering the Credit Bureau Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

114.    Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that the Court enters a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs and awarding Plaintiff such other and furth relief as the Court may deem appropriate and proper.

**<u>JURY DEMAND</u>**

Plaintiff hereby demands jury trial on all issues so triable.

Dated: February 20, 2026

         **CONSUMER ATTORNEYS, PLLC**

         */s/ Nisan Zaghi*
         Nisan Zaghi, NY Bar # 5711072
         CONSUMER ATTORNEYS
         68-29 Main Street
         Flushing NY 11367
         T: (718) 925-0276
         F: (718) 247-8020
         E: nzaghi@consumerattorneys.com

         *Attorneys for Plaintiff*
         *Yokaira Altagracia Matias Cruz*